F I L E D
Clerk
District Court

SEP 26 2022

for the Northern Mariana Islands
By_____.
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,

               Plaintiff,

      v.

COMMONWEALTH CASINO COMMISSION, AS AGENCY OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS,

               Defendant.

Civil Case No. 1:22-cv-00007

**MEMORANDUM DECISION GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO COMPEL ARBITRATION**

      Plaintiff Imperial Pacific International (CNMI), LLC ("IPI")[1] initiated this civil action on May 23, 2022 seeking a temporary restraining order enjoining Defendant Commonwealth Casino Commission ("the CCC") from convening an enforcement hearing on May 24-25, 2022 that would revoke IPI's exclusive casino license. (Compl. 20, ECF No. 1; Emergency Mot. for TRO 1-2, ECF No. 5.) The Court subsequently granted the temporary restraining order. ("TRO," ECF No. 11.)

[1] Originally, Plaintiffs in this action included Best Sunshine and IPI. At the hearing conducted on August 19, 2022, however, Plaintiffs' counsel conceded that this Court would not lose jurisdiction should Best Sunshine be excluded as a party and leaving IPI as the sole Plaintiff. Based on this concession and the absence of clear language expressly or impliedly suggesting Best Sunshine is a third party beneficiary to the Casino License Agreement, the Court strikes Best Sunshine as a plaintiff in this matter. *See Murphy v. DirectTV, Inc.*, 742 F.3d 1218, 1234 (9th Cir. 2013) (citation omitted) ("'[T]he mere fact that a contract results in benefits to a third party does not render that party a "third party beneficiary"'; rather the parties to the contract must have expressly intended that the third party would benefit."); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006) (citation omitted) (recognizing that the contract must "reflect[] the express or implied intention of the parties to the contract to benefit the third party").

IPI also sought (1) an order compelling the Commission to participate in non-binding arbitration with the American Arbitration Association ("AAA") pursuant to Section 30 of the Casino License Agreement ("CLA"); and (2) a preliminary injunction against the Commission from proceeding with revocation without first going to arbitration. (Compl. 20, ECF No. 1.) At a hearing held on August 19, 2022, the Court took the matter under advisement. (Min., ECF No. 27.) On the record at a status conference held less than a week later, the Court GRANTED IPI's motion for a preliminary injunction and motion to compel arbitration. (Min., ECF No. 28.) The Court now issues this memorandum decision memorializing its reasoning.

## I.     FACTUAL & PROCEDURAL BACKGROUND

In 2014, the Commonwealth of the Northern Mariana Islands sought to issue its first exclusive casino gaming license. (Compl. 1 ¶ 2.) Public Law 18-56 empowered the CNMI to issue this license (*id*. at ¶ 3), and when the Casino License Agreement was drafted, Section 1 of the CLA expressly provided that the CLA "is intended to implement and supplement the terms of the Act" found at Public Law 18-56 (CLA 2 ¶ 1, ECF No. 1-2 at 6 (Ex. 1 to Compl.)). Best Sunshine, a company incorporated in the British Virgin Islands and owned by Imperial Pacific International Holdings Ltd., submitted a proposal that was ultimately selected by the CNMI. (Compl. 1-2 ¶¶ 5-6.) Although Best Sunshine was awarded the license, the CNMI determined that the license should "be held by a Commonwealth entity and has required Best Sunshine to form a domestic entity, Imperial Pacific International (CNMI), LLC, which shall be the designated licensee . . . and who shall assume all promises, obligations and agreements previously made Best Sunshine International Limited in this matter." (CLA 1.)

### A.  Commonwealth License Agreement ("CLA")

The Commonwealth License Agreement was prepared, and Best Sunshine formed IPI to enter into the CLA with the CNMI. (Compl., 3 ¶ 8.) On August 12, 2014, Ms. Cai Ling Li, a

2

director of IPI, executed the CLA on behalf of IPI, and the Commonwealth Lottery Commission executed the CLA on behalf of the CNMI, which was approved by Gilbert Birnbrich, Acting Attorney General of the CNMI. (*Id.*; Min., ECF No. 27-1 (CLA with signature page).)

Although the original authority over granting the exclusive casino license was vested in the Commonwealth Lottery Commission, Public Law 18-63 and the CLA expressly ended that authority upon issuance of the license. (CLA 2 ¶ 2.) The Commonwealth Casino Commission was thereafter charged with the "approval of all casino operations and gaming activities conducted under the Casino License including but not limited to the establishment of gaming rules and regulations and licensing consistent with the requirements of the Commonwealth Administrative Procedure Act and this Agreement[.]" (CLA 2 ¶ 3.) The Commission also possessed the power to suspend or revoke IPI's license in accordance with the CNMI's Administrative Procedure Act where violations occur. (*Id.*) "In essence, the [Commission] replaced the Lottery Commission as the government entity charged with authority over the License and the CLA." (Compl. 3 ¶ 11.)

Among its many provisions, the CLA granted the exclusive license to IPI for a consecutive period of 25 years, but it also required an annual license fee of $15 million. (CLA 2-3 ¶¶ 4, 5.) In addition, and critical to the instant dispute, is a force majeure clause at Section 25 that states, in pertinent part:

> Licensee shall not be in default for any failure or delay in the performance due under this License Agreement if such failure or delay is due to causes beyond reasonable control including, but not limited to: Act(s) of God, war(s), strike(s) or labor dispute(s), embargo(es), act(s) of terrorism, fire(s), flood(s), or accident(s) without the fault or negligence of the Licensee ("Force Majeure Event"). Invocation of force majeure by the Licensee shall not excuse any payment obligations to the Commonwealth where the grounds and or purpose for such payments have already accrued.

> Where such Force Majeure Event results in failure in the performance or delay exceeding six (6) months of the performance due under this License Agreement, the Licensee may terminate this License Agreement forthwith provided that the Licensee shall not be excused from any payment obligations to the Commonwealth where the grounds and/or the purpose for such payments have already accrued.

3

1
2

(*Id*. at 13 ¶ 25.)

3

Where parties disagree on a particular term of the CLA, Section 30 governs such disputes

4

stating in pertinent part:

5

6

7

8

9

> A dispute ("Dispute") is defined as any and all disagreement(s) between the Parties as to terms or requirements of this License Agreement excluding issues relating to gaming operations which are under the authority of the Casino Commission and proceedings regarding revocation or suspension of this license. The parties acknowledge that due to the nature and complexity of this License Agreement, disputes may arise concerning requirements. In order to provide a structure for resolution of disputes the Parties agree to the following dispute resolution process that must be used prior to initiation of court proceedings.

10

(*Id*. at 14-15 ¶ 30.) Among the procedures provided for in the CLA is the submission of the "dispute

11
12

to the American Arbitration Association for non-binding arbitration in accordance with applicable

13

rules and limited by terms of this License." (*Id*. at ¶ 30(f).) Importantly, "[t]his process shall not

14

be applicable to License suspension and revocation proceedings as shown in section 31 below."

15

(*Id*. at ¶ 30(i).)

16

As referenced, Section 31, which governs license suspension and revocation, states in

17

pertinent part:

18

19

20

21

> Licensee is bound to comply with all terms and conditions of this Casino License and a violation of these requirements shall be considered a breach thereof. A material breach thereof may be grounds for Casino License suspension or revocation. Unless otherwise indicated in this License Agreement, the procedures established by the Commonwealth Administrative Procedure Act shall apply to proceedings for suspension or revocation of this License authority.

22

23

24

> Parties agree that the occurrence of any or more of the following events shall constitute a material breach of this License Agreement ("Material breach") and grounds for Casino License revocation or suspension in accordance with the terms of this section 31:

25

26

> a.   Failure to pay any amount due and payable hereunder upon the date when such payment is due[.]

27

(*Id*. at 15 ¶ 31.)

28

/ /

4

**B.  2020 Complaints & License Suspension**

Initially, IPI successfully met its annual license fee obligations between 2015-2019. (Compl. 4 ¶ 12.) Then, due to various natural disasters, changes in labor law, and the COVID-19 global pandemic, IPI "was ultimately forced to close its premises and cease all operations in the casino on March 17, 2020." (*Id*. at 7-10 ¶¶ 31-40.) IPI's revenues dropped precipitously putting it in "dire financial straits[.]" (*Id*. at 10 ¶ 40.)

In 2020, the Executive Director of the Commission initiated five Complaints against IPI before the Commission, later consolidated into Enforcement Action 2020-001 (encompassing Complaints 2020-001 and 2020-002) and Enforcement Action 2020-003 (encompassing Complaints 2020-003, 004, and 005). (Compl. 10 ¶ 42.) As represented by IPI, these consolidated enforcement actions include claims of IPI's failure to make community benefit fund contributions (original Complaint 2020-001),[2] IPI's failure to pay the 2020 annual license fee (original Complaint 2020-002), violations of a prior Commission order "requiring IPI to maintain at least $4.2 million in cash or cash equivalents in a bank in the CNMI or United States and for IPI's executives to detail the means by which they would comply with that order" (original Complaint 2020-003), violations of a prior CCC order "requiring IPI to pay accounts payable over 89 days old and to certify compliance with that order" (original Complaint 2020-004), and IPI's failure to pay the 2020 casino regulatory fee (original Complaint 2020-005). (*Id*.)

---

[2] Amendment no. 9 to the CLA was entered into on December 15, 2020 by IPI, the CNMI Governor, and the CNMI Lottery Commission, which allowed IPI "time to fulfill its payment obligations under the CLA to make the Community Benefit Fund contribution[.]" (Compl. 9-10 ¶ 41.) Amendment no. 9 allows IPI to defer payment of its 2018 and 2019 community benefit fund obligations to October 2025, and the 2020 obligations to October 2023. (Am. 9 at 2-4, ECF No. 1-6.) The CNMI Superior Court found that this amendment was done while the complaints were pending before the Commonwealth Casino Commission. (Superior Court Order Affirming Suspension ¶ 46, ECF No. 22-1 at 13.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14

    To address these complaints, the CCC subsequently held two evidentiary hearings: the first

on February 25, 2021 presided over by CCC Vice Chairman Ralph S. Demapan, and the second

on March 2, 2021 presided over by CCC Chairman Edward C. Deleon Guerrero. (Compl. 10 ¶ 43;

CCC Order No. 2021-002, ECF No. 1-3 at 1 ¶¶ 1, 2.) At these hearings, the CCC concluded that

IPI offered no defense to the claims encompassed in original enforcement actions 2020-001, 003,

004, and 005. (*Id.* at 3, 6 ¶¶ 5, 17.) IPI did, however, assert a force majeure defense as to the failure

to pay the annual license fee in original enforcement action 2020-002 based on Section 25 of the

CLA. (*Id.* at 4 ¶ 9.) Nevertheless, IPI "offered no admissible testimony . . . that it was unable to

pay the annual license fee for any reason at all." (*Id.*) Thus, the CCC concluded that the Executive

Director established by clear and convincing evidence that IPI violated applicable CNMI law,

regulations, and the CLA for all complaints and enforcement actions. (*Id.* at ¶¶ 10, 17; *see* CCC

Order No. 2021-002, ECF No. 1-3.)

15
16
17
18
19
20
21
22
23
24

    On April 22, 2021, the CCC issued Final Order No. 2021-002 based on  the previous

evidentiary proceedings. (Compl. 11 ¶ 45; CCC Order No. 2021-002, ECF No. 1-3.) Regarding

IPI's force majeure defense, the CCC found that "the force majeure clause does not, as a matter of

law, apply to payment of the annual license fee, as the time for payment as set by statute, and the

Lottery Commission could not amend an act of the Legislature[,]" and "even if the force majeure

clause of the [CLA] could toll the requirement to pay the Annual License Fee, [IPI] has not

established that its failure to make the required annual license fee payment when due was at all

related to any force majeure reason[.]" (CCC Order No. 2021-002, ECF No. 1-3 at ¶ 10.) In the

end, the CCC's Order

25
26
27

> suspended IPI's gaming license, ordering IPI to pay a total of $18.65 million that it
> found was due under the CLA's Annual License Fee and Annual Regulatory Fee,
> and imposing a total of $6.6 million in penalties against IPI. The Order also required
> IPI to comply with previous Orders issued by the [CCC].

28

(Compl. 11 ¶ 45 (citing CCC Order No. 2021-002).)

### C.  2021 Complaints & Revocation Proceedings

Five months after the CCC's Suspension Order issued based on the 2020 Complaints against IPI, the Executive Director of the CCC filed five new complaints seeking, among other things, a declaration by the CCC to immediately revoke and terminate IPI's license based on additional violations. (*See* ECF No. 22-2 at 1, 19, 38, 51, 62.) They include: Complaint No. 2021-001 for IPI's continuing failure to pay the 2020 annual license fee and related failure to adhere to CCC Order No. 2021-002; Complaint No. 2021-002 for failure to comply with Commission Order No. 2020-003 (maintain cash reserves and other obligations), and related failure to adhere to CCC Order No. 2021-002 (ordering compliance with Order 2020-003, among other things); Complaint No. 2021-003 for failure to pay the 2020 and 2021 casino regulatory fee and related failure to adhere to CCC Order No. 2021-002 (ordering payment of fee, among other things); Complaint No. 2021-004 for failure to pay the annual license fee of 2021; and Complaint No. 2021-005 for failure to pay the casino regulatory fee for 2021. (Compl. 11-12 ¶ 48.)

IPI filed its Answer and Notice of Defenses on November 15, 2021, asserting as its first defense to all five complaints the force majeure clause at Section 25 of the CLA. (Notice of Defense 10, ECF No. 22-3.) IPI claimed that it should not be found "in default for any inability or delay in performance under the relevant agreements due to force majeure under CNMI Law, the Force Majeure clause set forth in the [CLA], and the undisputed occurrence of force majeure major events[.]" (*See id*. at 64 ¶ G.)

A revocation hearing before the CCC was scheduled for May 24-25, 2022. (Compl. 13 ¶ 49.) In preparation for the hearing, the Executive Director filed motions in limine seeking to exclude "any evidence of a defense of force majeure in connection with the claims against IPI. The CCC Executive Director argues that IPI should not be permitted to even introduce evidence in

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

support of a force majeure defense" because it is inapplicable. (Compl. 13 ¶ 51.)[3] In response, IPI filed the instant action seeking an injunction granting its demand for a non-binding arbitration on this disputed issue, and directing the CCC to submit to arbitration.

**D. Superior Court Decision**

Almost concurrently with the Executive Director's 2021 Complaints, IPI appealed the CCC's Order suspending IPI's license based on the 2020 Complaints to the Commonwealth Superior Court. (Compl. 11 ¶ 46.) IPI primarily argued that the CCC "failed to recognize the doctrine of force majeure despite the presen[ce] of the force majeure provision in the CLA and the clear, severe impact of a force majeure event, the COVID-19 pandemic, and IPI's ability to comply with its obligations." (*Id.*)

The Superior Court issued its decision on IPI's appeal of the CCC's suspension of IPI's exclusive casino license and monetary penalties on March 15, 2022. Affirming the CCC's suspension, the court reasoned as to the force majeure defense:

> [U]ltimately, the Casino Commission's suspension of [IPI]'s license was made was [sic] for material and major violations other than solely for the non-payment of the Community Benefit Fund and Annual License Fee payment requirements. The Court views this as a fatal flaw to Petitioner's force majeure defense. Put differently, the basis for Petitioner's Exclusive Casino License suspension was made upon multiple grounds separate and distinct from its failure to may make [sic] Community Benefit Fund payments and the Annual License Fee.

(ECF No. 22-1 at 23.) Thus, the force majeure defense that IPI relied on was non-consequential as the court could affirm the CCC's final suspension due to "the issues of [IPI]'s insolvency, ability to clear its accounts payable, make the required corporate and banking certifications ( [sic] and maintain minimum capital and cash in an approved bank[.]" (*Id.* at 25.) IPI has since appealed this Superior Court decision to the CNMI Supreme Court. (Compl. 11 ¶ 47.)

---

[3] In its opposition, the CCC defendant through its Executive Director indicated that it would be amenable to withdrawing the motions in limine. (Opp'n 19, ECF No. 22.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E.  District Court Proceedings**

On the eve of the revocation hearing scheduled for May 24-25, 2022, IPI filed a complaint and emergency motion for a temporary restraining order against the CCC's revocation hearing. (Compl., ECF No. 1; Mot. for TRO, ECF No. 5.) The same day, this Court granted IPI's motion and issued a temporary restraining order finding that without the order, IPI would "incur immediate and irreparable injury because IPI will be deprived of their contractual right to assert a force majeure defense at § 25 of the Casino License Agreement . . . and a procedural right to the dispute resolution process at § 30 of the CLA . . . which allows for arbitration and the opportunity to submit the arbitrator's decision to the Commonwealth Superior Court[.]" (ECF No. 11 at 3 ¶ 2.) This Court further found that "the balance of hardships tip[ped] decidedly in [IPI's] favor" and that there were "serious questions going to the merits" of the force majeure and arbitration provision. (*Id*. at ¶¶ 3, 4.)

Days later, the parties submitted a stipulation to stay briefing on IPI's motion because "significant progress toward settlement" was made and the parties needed "additional time to finalize the terms for an agreement in principle and to enter a comprehensive settlement agreement memorializing those terms." (Stip. 2 ¶ 4, ECF No. 15.) The Court granted the stipulation and extended the TRO. (ECF No. 16.) When no settlement was reached, the CCC timely filed its opposition (ECF No. 22), to which IPI replied (ECF No. 23). A hearing on the matter was held on August 19, 2022 at which time the Court took the matter under advisement. (Min., ECF No. 27.) Another hearing was held on August 24, 2022 where the Court granted IPI's motion for a preliminary injunction and motion to compel arbitration. (Min., ECF No. 28.) Specifically, the Court determined that while IPI waived its right to compel arbitration for the 2020 complaints, it did not waive its right to compel arbitration for the 2021 Complaints. (*See* Tr. 12-13, ECF No. 31.)

As to the 2021 Complaints, the Court found that IPI would likely succeed on the merits in moving to compel for arbitration and therefore granted the preliminary injunction. (*Id.*)

## II.     LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

## III.     DISCUSSION

There are two pivotal issues in the case at bar: (1) whether IPI has delayed and therefore waived the opportunity to seek arbitration under the CLA, and (2) whether a dispute on the applicability of a force majeure defense in the instant case is subject to Section 30's dispute (i.e., arbitration) resolution process despite Section 30's carve-out for revocation proceedings.[4] As to the former, the Court finds that while IPI has waived its right to arbitrate the allegations in the 2020 complaints, it has not waived its right to arbitrate the allegations in the 2021 complaints, which are the subject of this dispute. As to the latter, the Court grants IPI's motion for a preliminary injunction, determining that a force majeure defense may be subject to Section 30's dispute resolution process. Although Section 30 specifically precludes arbitration for issues relating to revocation proceedings (such as the failure to pay annual dues), a force majeure defense that has not been waived must be allowed to go to arbitration. Otherwise, Section 25's force majeure provision would be effectively nullified and deprived of any meaning. The Court addresses these issues of waiver and application of Section 25's force majeure provision in turn.

---

[4] Additionally, the CCC disputed whether the Court could compel arbitration absent the availability of non-binding arbitration pursuant to Section 30. However, the AAA has since agreed to carry out non-binding arbitration. (*See* ECF No. 26.) This argument is therefore mooted.

**A. Does the Court have authority to decide whether there has been a waiver of arbitration?**

As a threshold matter, the Court must address whether it has the authority to decide if IPI has waived its right to arbitrate. IPI relies on the U.S. Supreme Court case *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), to support its argument that it is the arbitrator that decides the issue of waiver—not the courts. (Reply 5, ECF No. 23.) As IPI suggests, it is the arbitrator in this instance who must decide waiver because other courts who have held otherwise have done so "***during pending litigation before that same court***." (*Id.* (citing *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1 (1st Cir. 2005)).) By contrast, the CCC relies on the more recent case by the Ninth Circuit of *Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016), which discusses the *Howsam* decision, to assert that the courts have jurisdiction to decide waiver. (Opp'n 14.)

The Ninth Circuit in *Martin* held that the court, not the arbitrator, decides whether a party has waived its right to arbitration by litigation conduct. 829 F.3d at 1123. In *Martin*, the Ninth Circuit described *Howsam* as having "distinguished between two categories of gateway issues on motions to compel arbitration, each of which has a different presumption as to whether a court or an arbitrator should decide." *Id.* at 1122-23 (citations omitted). The first category concerns "questions of arbitrability" which "include[] issues that the parties would have expected a court to decide such as 'whether the parties are bound by a given arbitration clause[.]'" *Id.* at 1123 (citation omitted). Such issues, *Howsam* and *Martin* conclude, are for courts to decide—not arbitrators. *Id.* (citing *Howsam*, 537 U.S. at 83). The second category concerns "procedural issues" which are "presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* (quoting *Howsam*, 537 U.S. at 84). These include, for example, whether the statute of limitations has run for filing a case with the arbitral forum. *Id.* (citation omitted) But waiver by litigation conduct, as the Ninth Circuit concluded, "is part of the first category of gateway issues," and for the court to decide—not the arbitrator. *Id.*

1       To be sure, the Supreme Court did note that "the presumption is that the arbitrator should

2   decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" *Howsam*, 537 U.S. at 85

3   (citation omitted). But as the Ninth Circuit identified: "As other circuits have found, the reference

4   to waiver in *Howsam* was whether a party waived arbitration by failing to comply with the

5   arbitration forum's specific rules—a question that the Supreme Court logically concluded was

6   better answered by the forum that wrote the rules." *Martin*, 829 F.3d at 1123 n.3 (citing *Howsam*,

7   537 U.S. at 85.). "The arbitrator, however, does not have expertise regarding whether litigation

8   conduct *in front of the district court* was enough to constitute revocation of the arbitration clause

9   and would not be expected to resolve that dispute." *Id.* (citing *Howsam*, 527 U.S. at 83-84). This

10  Court rejects IPI's argument that it must be the court with pending litigation that is also exclusively

11  the one to determine waiver. Rather, the Court construes both *Howsam* and *Martin* to mean that

12  courts in general are fit to decide issues regarding waiver of arbitration.

13      In the same vein, IPI relies on an Eighth Circuit decision to argue that it is the arbitrator

14  who decides waiver when litigation conduct occurs before a court different than the one deciding

15  the issue of waiver. *Nat'l Am. Ins. Co. v. TransAmerica Occidental Life Ins. Co.*, 328 F.3d 462,

16  466 (8th Cir. 2003). But the Eighth Circuit appears to be in the minority and is not binding

17  precedent on this Court. *See Int'l Energy Ventures Mgmt., LLC v. United Energy Grp.*, Ltd., 999

18  F.3d 257, 263 (5th Cir. 2021) (determining that "[m]ost circuits to consider the issue have held

19  that litigation-conduct waiver is presumptively a judicial matter" and citing to *Transamerica* as a

20  differing circuit). Instead, the Court finds that the First Circuit's decision in *Marie v. Allied Home

21  Mortg. Corp.*, 402 F.3d 1 (1st Cir. 2005), more persuasive.

22      In *Marie*, the First Circuit acknowledged the Eighth Circuit's decision in *TransAmerica*,

23  but stated: "The Eighth Circuit has held, *with little discussion*, that *Howsam* . . . indicate[s] that

24  waiver is now presumptively an issue for the arbitrator, and not for the courts, at least where the

conduct allegedly constituting waiver is due to litigation in some other court." *Id*. at 12 (emphasis added) (citations omitted). The *Marie* court ultimately held that *Howsam* and another Supreme Court decision "did not intend to disturb the traditional rule that waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court." *Id*. at 14. Just as the case here, the First Circuit dealt with a claim of litigation activity before an agency, the Equal Employment Opportunity Commission. Yet despite the "unusual" circumstances in which the litigation activity was before the agency rather than before the court, the First Circuit determined that "[t]his makes no difference. Courts are well suited to determine the sort of forum-shopping and procedural issues that are likely to arise in litigation before the EEOC, and sending the waiver issue to the arbitrator would still be inefficient." *Id*. Thus, "[t]he proper presumption in this case is that the waiver issue is for the court and not the arbitrator." *Id*.

This Court agrees with the First Circuit's decision in *Marie* and does not read *Martin* as narrowly as IPI. It is true that a district court is better situated to evaluate whether there's been waiver if the proceedings have remained with the district court since the start of the case. But the arbitrator is in no better a position than this Court where the proceedings have occurred not before the district court, but at the agency and state superior court level. The Court here already has before it the whole record, and as described by *Marie*: "If the arbitrator were to find that the defendant had waived its right to arbitrate, then the case would inevitably end up back before the district court with the plaintiff again pressing his claims." *Id*. at 13-14. Deciding waiver here before this Court is significantly more efficient. And although it may be the usual case that a party's litigation conduct and the issue of waiver be before the same court—it need not be. The Court therefore reads *Martin* more broadly and determines that waiver by litigation conduct *before judicial forums in general* is an issue for the court to decide, not the arbitrator.

/ /

**B.  Did IPI Waive its Right to Arbitrate the 2020 & 2021 Complaints?**

IPI argues it has not waived its right to arbitrate because it timely moved for arbitration prior to the May 24-25, 2022 revocation hearing before the CCC. (Reply 7.) The CCC disagrees because it claims that IPI delayed in asserting its claim for arbitration as  its "Executive Director filed pre-hearing motions with the CCC, met and conferred with opposing counsel on numerous occasions, prepared its witnesses, and worked to retain a rebuttal expert witness to respond to IPI's force majeure defense" prior to the 2022 revocation hearing wherein IPI first raised its claim for arbitration. (Opp'n 17.)

The party arguing waiver has the burden of proof. *Fisher v. AG Becker Paribas Inc*., 791 F.2d 691, 694 (9th Cir. 1986). "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id*. (citations omitted). Importantly, the U.S. Supreme Court has since determined that the third factor concerning prejudice is not required in the waiver analysis. *Morgan v. Sundance Inc.*, 142 S. Ct. 1708, 1712 (2022) (citation omitted) ("The prejudice requirement . . . is not a feature of federal waiver law generally."). Thus, because the first factor is undisputed and because the third factor is not required, it is only the second factor that the Court must use to determine whether there has been waiver by IPI.

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Martin*, 829 F.3d at 1125. "[E]xtended silence and delay in moving for arbitration," however, may be suggestive of a party's inconsistent acts. *Id*. (citation omitted). "[A] party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Newirth v. Aegis*

*Senior Communities, LLC*, 931 F.3d 935, 941 (9th Cir. 2019). Months-long delays can constitute waiver where the parties have already engaged in extensive litigation. *See Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 949 (1st Cir. 2004) (waiting eight months after having engaged in discovery including more than a dozen depositions, interrogatories, document production and a conference with the magistrate judge and opposing party may establish waiver), *abrogated by Morgan*, 142 S. Ct. 1708; *Gray Holdco Inc. v. Cassady*, 654 F.3d 444, 455 (3d Cir. 2011) (providing no explanation for waiting ten months after filing suit before seeking enforcement of the arbitration provision constitutes waiver); *Messina v. N. Cent. Distrib. Inc.*, 832 F.3d 1047, 1050 (8th Cir. 2016) (finding waiver where the parties had substantially invoked the litigation machinery within eight months by filing an answer, engaging in pretrial hearings, scheduling reports and trial dates, discovery deadlines, and filing a motion to transfer venue). The critical question is whether a party "chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court." *Martin*, 829 F.3d at 1125 (citations omitted).

### 1. 2020 Complaints

This Court finds that at no point did IPI ever seek arbitration for the 2020 Complaints whether before the CCC or the Superior Court. At the motion hearing conducted on August 19, 2022, this Court inquired with IPI's counsel why IPI never asserted a motion to compel arbitration when the CCC first rejected the force majeure defense. Counsel responded that he did not know since he was not yet involved. Nevertheless, IPI's counsel at the time could have argued force majeure as to all claims and assert a right to arbitration at any point in the last several years. But IPI's former counsel chose not to do so. The 2020 Complaints have been adjudicated at both the agency level and the trial court level and is now the subject of an appeal. It is much too little and too late to now assert force majeure as to the 2020 Complaints. Based on IPI's extensive delay,

the Court finds that IPI waived its right to assert arbitration for the disputes contained in the 2020 Complaints.

    2.  <u>2021 Complaints</u>

      As to the 2021 Complaints filed by the Executive Director, the Court finds that IPI has not waived its right to arbitrate a force majeure dispute. The Executive Director filed the 2021 Complaints before the CCC in September 2021, to which IPI asserted a force majeure defense in November 2021. The Executive Director sought to preclude this defense in April 2022 through motions in limine. It was after the motions in limine were filed—*but before any decision on the merits*—that IPI was prompted to assert arbitration. Although IPI did not assert a right to compel arbitration until this point, the Court finds that IPI's delay was not to take advantage of litigating in the forum, namely the CCC. Rather, when it became clear that the Executive Director sought to absolutely foreclose any force majeure defense, then IPI was compelled to move for arbitration. This does not evince any bad faith or tactical advantage by IPI because the CCC had not made any decisions on the merits of the motions in limine. Rather, IPI sought to enforce its force majeure defense by demanding arbitration and seeking an injunction to compel the CCC to participate in the non-binding arbitration. The Court is unconvinced that significant litigation on the merits have taken place to establish that any delay warrants a finding of waiver by IPI. To be sure, the Executive Director did engage in preparations for the revocation hearing—but the Executive Director was required to do so anyway to establish its burden of proof. IPI asserted a defense of force majeure against all the 2021 Complaints before the CCC from their inception. It was not until the CCC's Executive Director moved to prohibit IPI from introducing any evidence before the CCC to support its defense that IPI asserted its right to arbitration on this disputed defense. On this basis, the Court finds that IPI has not waived its right to arbitration.

Unlike the proceedings involving the 2020 Complaints, IPI has in fact asserted the defense of force majeure against the 2021 Complaints as the reason for its inability to pay the various fees and orders and now asserts the right to submit this dispute of fact to non-binding arbitration pursuant to the CLA. There have been no other proceedings by the CCC prior to the initiation of this revocation hearing, and therefore the assertion to the right of arbitration as it relates to the 2021 Complaints is still ripe. Therefore, the Court finds that IPI has not waived its right to assert the force majeure defense against the allegations in the 2021 Complaints and thus may proceed with arbitration.

## C. Preliminary Injunction

The parties have diametrically opposed interpretations of Sections 25 (force majeure), 30 (dispute resolution), and 31 (revocation and suspension). Both parties assert that the other's interpretation of the applicability of a force majeure defense to the CLA's dispute resolution process would lead to an absurd result. As discussed below, the Court interprets the relevant provisions narrowly, which results in favor of IPI, as allowing a dispute about the applicability of a force majeure defense to go to arbitration. The Court further finds that IPI would be irreparably *and* imminently injured without injunctive relief, that the equities tilt in favor of IPI, and that public policy favors that this matter go to arbitration.

### 1. Likelihood of Success on the Merits

The crux of IPI's motion is whether IPI's disputed force majeure argument—which is grounded as a defense to the CCC's revocation proceedings against IPI—is subject to the CLA's dispute and arbitration resolution provision at Section 30. The CCC argues that a plain reading of Section 30 of the CLA expressly precludes arbitration for issues relating to revocation proceedings. It contends that requiring arbitration as "a preliminary step as a pre-requisite to a suspension or revocation proceeding would lead to absurd results." (Opp'n 12.) IPI, by contrast, maintains that

it is the CCC's interpretation "that is absurd, because it would deprive Section 30 of any meaning whenever a revocation proceeding was initiated on the basis of an alleged breach of the CLA." (Reply 3.) "[T]he question of whether IPI's payment obligation is excused by virtue of the force majeure clause is a question of contract interpretation subject to the dispute resolution of Section 30 and that question is distinct from the question of revocation pending before the CCC." (*Id*. at n.2.)

"The intent of contracting parties is generally presumed to be encompassed by the plain language of contract terms." *Riley v. Public School System*, 4 NMI 85, 88 (1994) (citation omitted). Here, the plain language of Section 25 indicates that IPI has a contractual right to assert a force majeure defense. This defense comes into play when there is "*any* failure or delay in the performance due under this [CLA.]" (CLA 13 § 25 (emphasis added).) As represented by its own terms, force majeure may apply even where IPI is unable to meet its financial obligations due under the CLA.

Although Section 31 precludes arbitration as to issues relating to revocation proceedings, the Court must give full effect to the terms of the contract to avoid absurd results. *See Pac. Rim Land Dev., LLC v. Imperial Pac. Int'l (CNMI), LLC*, 2020 WL 2026505, at *2 (D. N. Mar. I. Apr. 28, 2020) (interpreting statutory provisions to avoid absurd results). Here, it would be absurd to hold that IPI is absolutely precluded from invoking its Section 25 force majeure defense to its failure to pay based on the CCC's reading of Section 31. The CCC's interpretation of and conduct in relation to Sections 25, 30, and 31 would effectively nullify Section 25; IPI would never be able to assert a force majeure defense before a suspension and/or revocation hearing. The Court therefore rejects the CCC's argument that adopting IPI's interpretation "would allow it to arbitrate *any* issue raised by the CCC in a revocation proceeding[.]" (Opp'n 12.) It is not that IPI would

arbitrate any issue, but rather, IPI would be allowed to raise a force majeure defense and subsequently arbitrate if there is a dispute concerning such.

The Court does not interpret Sections 25, 30, and 31 as broadly as the CCC suggests it would be read under IPI's interpretation. Rather, the Court directs its attention to the more narrow issue of whether a force majeure defense, subject to dispute, can go to arbitration. The Court believes it does. Given this result, IPI's arguments would likely succeed on the merits weighing in favor of a preliminary injunction.

2. <u>Irreparable Harm</u>

A preliminary injunction may issue only upon a showing that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (citations omitted). Without enjoining the CCC from initiating its revocation hearing against IPI when the Executive Director sought to preclude IPI from presenting evidence to assert its force majeure defense, IPI will likely suffer immediate and irreparable injury. The harm is particularly irreparable where, here, the CCC seeks to revoke IPI's exclusive casino license and thereby handicap and ultimately terminate IPI's operations in the CNMI. *Cf. Loan Payment Admin. LLC v. Hubanks*, 2015 WL 1245895, at *15 (N.D. Cal. Mar. 17, 2015) (concluding that the mere possibility of a suspended or revoked license without providing facts and dependent on actions of third party is insufficient to establish irreparable injury). A revocation of IPI's license would eliminate its existence as a casino, forcing it to shut down immediately, and thereby extremely disrupting IPI's operations. *See D.A.R.E. N.J.Inc. v. D.A.R.E. Am., Inc.*, 2012 WL 12911043, at *5 (C.D. Cal. Nov. 16, 2012) (terminating business enterprise qualifies as irreparable injury). Therefore, irreparable harm is not only likely, but also imminent and this factor weighs in favor of IPI.

/ /

/

3.   Balance of Equities

Before issuing a preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief[.]" *Winter*, 555 U.S. at 24 (citation omitted). In balancing the equities between the parties, the court must weigh the effect of different harms to both parties, at its own discretion. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) ("The assignment of weight to particular harms is a matter for district courts to decide.") Here, the balance of equities tilts in favor of IPI. IPI faces the revocation of its exclusive casino license, and as detailed above, potentially permanent damage to its operations in the CNMI. By contrast, by granting the preliminary injunction, the CCC will have suffered at worst a delay in its efforts to suspend and/or revoke IPI's license until arbitration has completed. There is also nothing requiring the CCC in following the findings of the arbitrator; rather, the CCC will be enjoined from instituting revocation proceedings pending the outcome of the *non-binding* arbitration guaranteed by the CLA. Therefore, the Court finds that this factor weighs in favor of IPI.

4.   Public Policy

Finally, the court must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. In making this determination, the Court "primarily addresses impact on non-parties rather than parties." *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002) *abrogated on other grounds by Winter*, 555 U.S. 7. Here, public policy weighs in favor of allowing for arbitration because the public has an interest in ensuring contract provisions are accorded their plain meaning and that arbitration clauses retain their full effect. As dictated by the Supreme Court in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983): "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in

favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Here, Section 25 of the CLA gives IPI as the Licensee a defense from being found in default for any failure or delay in the performance due under the CLA. Section 30 defines disputes and the dispute resolution process, to include a party's option to submit the dispute to the American Arbitration Association. The AAA process is not applicable to revocation proceedings. (*Id*.) Based on these CLA terms, the Court concludes that the public policy in favor of enforcing the arbitration term of the CLA weighs in IPI's favor.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that it has the authority to decide whether IPI has waived its right to arbitrate pursuant to the CLA, and that in this case, IPI has not waived its right to arbitrate as to the allegations in the 2021 Complaints, which are the subject of the 2022 revocation hearing before the Commonwealth Casino Commission. Additionally, IPI must be allowed to arbitrate all disputes on the applicability of its force majeure defense to the allegations contained in the 2021 Complaints, lest Section 25 of the CLA is deprived of any meaning. The Court therefore GRANTS IPI's motion for a preliminary injunction enjoining the CCC from proceeding with the 2022 revocation hearing based on the 2021 Complaints; and GRANTS IPI's motion to compel the CCC to submit to arbitration pursuant to Section 30 of the CLA.

As the Court stated at the August 24, 2022 hearing, the CCC's prior decision to suspend IPI's license based on the 2020 Complaints, which has been affirmed by the Commonwealth Superior Court, and is now pending appeal, is not disturbed by this decision.

IT IS SO ORDERED this 26th day of September, 2022.

_____
RAMONA V. MANGLONA
Chief Judge