F I L E D
 Clerk
 District Court
OCT 06 2023
for the Northern Mariana Islands
By_____
           (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, | Civil Case No. 1:22-cv-00007 |
| Plaintiff, | **DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR AWARD OF FEES** |
| v. | |
| COMMONWEALTH CASINO COMMISSION, AS AGENCY OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, | |
| Defendant. | |

Before the Court is a motion by Defendant Commonwealth Casino Commission (the "CCC") pursuant to Federal Rules of Civil Procedure 65(c) to enter an order awarding costs in the amount of $100,000 from the security bond that Plaintiff Imperial Pacific International (CNMI), LLC ("IPI") posted when this Court granted IPI's motion for a temporary restraining order ("TRO," ECF No. 11) and subsequent injunction compelling arbitration (Def.'s Mot., ECF No. 41). The CCC filed the instant motion after the Ninth Circuit reversed this Court's decision issuing an injunction against the CCC and directing it to proceed with arbitration ("Appellate Memo. Decision," ECF No. 38). Plaintiff IPI filed its opposition to the award motion (Pl.'s Opp., ECF No. 45), to which the CCC responded (Def.'s Resp., ECF No. 46). At a hearing on September 28, 2023, the Court took the matter under submission. (Mins., ECF No. 50.) Having reviewed the record, considered the briefs, and heard counsels' arguments, the Court hereby GRANTS the

motion and awards the CCC all fees and costs it incurred and has proven in the amount of $94,068.15 from the $100,000 security bond IPI posted for its TRO and subsequent injunction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2014, the Commonwealth of the Northern Mariana Islands ("CNMI") sought to issue its first exclusive casino gaming license. (Compl. ¶ 2, ECF No. 1.) Later that same year, Best Sunshine International Limited (BVI) ("Best Sunshine") was selected to be the licensee, the Commonwealth License Agreement ("CLA") was prepared, and Best Sunshine formed IPI to enter into the CLA with the CNMI. (*Id.* ¶¶ 6, 8.) Although the original authority over granting the exclusive casino license was vested in the Commonwealth Lottery Commission, Public Law 18-63 and the CLA expressly ended that authority upon issuance of the license. (CLA 2, ECF No. 1-2.) The CCC thereafter, among other things, possessed the power to suspend and revoke IPI's license in accordance with the CNMI's Administrative Procedure Act where violations occurred. (*Id.*)

**A. Proceedings Before the CCC and Executive Director Complaints**

In 2020, the Executive Director of the CCC initiated five complaints against IPI alleging IPI's violation of the CLA by failing to make timely payments; the five complaints were consolidated into two Enforcement Actions for which the CCC held two evidentiary proceedings. (Memo. Decision 6, ECF No. 32; Compl. ¶ 42.) The CCC found that IPI violated the CLA for all complaints and IPI's force majeure defense was not applicable to any complaint. (Memo. Decision 6.) Months later, the Executive Director of the CCC again filed five new complaints ("Enforcement Actions 2021-001-005"). (*Id.* at 7.) Based on these new complaints, the CCC scheduled a revocation hearing for May 24-25, 2022. (*Id.*) In preparation for the hearing, the Executive Director

of the CCC filed motions in limine seeking to exclude any evidence of IPI's alleged force majeure defense in connection with these new complaints against IPI. (*Id.* at 7-8.)

### B. IPI's Requested Temporary Restraining Order and Injunction

A day before the CCC's scheduled revocation hearing, on May 23, 2022, IPI filed this civil action seeking an injunction in aid of arbitration, an order compelling arbitration, and an order appointing an arbitrator.[1] (Compl. ¶¶ 15, 17, 19.) IPI also filed an emergency motion for a TRO "enjoining Defendant Commonwealth Casino Commission . . . from proceeding with Enforcement Actions 2021-001-005 (consolidated), including convening the Enforcement Hearing scheduled for May 24-25, 2022." (Pl's Emergency Mot. for TRO, ECF No. 5.) The Court granted the TRO that same day, directed IPI to post a $100,000 security bond within two days, and set a hearing to determine IPI's motion for an injunction to continue the enjoinment of the CCC revocation hearing and to compel arbitration. (TRO; Mins., ECF No. 14.) IPI posted the bond.

Thereafter, the Court granted both IPI's motion for an order enjoining the CCC from convening the revocation hearing and motion to compel the CCC to engage in arbitration to address the dispute over IPI's asserted force majeure defense. (Mins. ECF No. 28; Memo. Decision.) The CCC filed an appeal, and the Ninth Circuit reversed this Court's decision. (Appellate Memo. Decision 2, ECF No. 38.)

## II. LEGAL STANDARD

"The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The Ninth Circuit has held that in order for a party to recover a bond posted pursuant to Fed. R. Civ. P. 65(c), the enjoined

---

[1] IPI subsequently obtained an arbitrator, and therefore this cause of action was rendered moot. (Pl.'s Notice, ECF No. 25.)

party must make a showing as to the following three items: (1) existence of a bond; (2) wrongful issuance of the injunction; and (3) monetary damages." *Qualcomm, Inc. v. Motorola, Inc.*, 185 F.R.D. 285, 287 (S.D. Cal. 1999) (footnote omitted) (citing *Buddy Sys., Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1169 n.10 (9th Cir. 1976)). "A party has been wrongfully enjoined within the meaning of Rule 65(c) when it turns out the party enjoined had the right all along to do what it was enjoined from doing." *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (citing *Blumenthal v. Merril Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990)). "Put another way, the question is whether the [party] 'ought not to have been enjoined.'" *Blumenthal*, 910 F.2d at 1055 (citing *Russel v. Farley*, 105 U.S. 433, 439 (U.S. 1881)).

Moreover, a "court's injunction [that] prevented [the party] from doing precisely what [the party] had a contractual right to do . . . is the very definition of being 'wrongfully enjoined.'" *Gopher Protocol, Inc. v. Discovery Growth Fund, LLC*, No. 2:19-CV-1039 JCM (BNW), 2020 WL 4018928, at *1 (D. Nev. July 15, 2020).

**III.   DISCUSSION**

The CCC, as the prevailing party on appeal, seeks the release of the full $100,000 of the security bond posted by IPI to pay for fees and costs incurred for participating in the forced arbitration and for damages sustained from the delay of the revocation proceeding. IPI opposed the motion on three grounds: the CCC cannot show it was wrongfully enjoined, the CCC's recovery must be limited based on proved damages, and the CCC should be disallowed from recovering its expert fees. For the reasons that follow, the Court finds that the CCC has met its burden to establish its entitlement to proven damages under the bond as a party that was wrongfully enjoined to participate in arbitration.

The first requirement for recovery—the existence of a bond—is not in dispute. The Court directed IPI to post the bond pursuant to Federal Rules of Civil Procedure 65(c) in the present

action (TRO 2; Mins., ECF No. 14), and IPI does not contest that the CCC has met this element. IPI disputes the remaining two elements.

### A. Wrongful Issuance of the Injunction

Although the Ninth Circuit did not use the precise words "wrongfully enjoined," the Ninth Circuit reversed this Court's order (1) enjoining the CCC from proceeding with the May 24-25, 2022, license revocation proceedings against IPI and (2) mandating arbitration. (*See* Appellate Memo. Decision 5.)

IPI does not contest in its opposition brief or at the motion hearing that the CCC was wrongfully enjoined to arbitrate. In essence, IPI's arguments are twofold: first, the CCC did not have the right to hold[2] the May 24-25 revocation proceeding; and second, the CCC did not have the right to terminate IPI's license. The first is erroneous given the Ninth Circuit's decision, and the second is not relevant to the claim for fees and costs actually incurred by the CCC's wrongful enjoinment to arbitrate.

To clarify, the CCC seeks award of fees for the wrongful enjoinment to arbitrate in the amount of $94,068.15, which is a separate ground from the CCC's wrongful enjoinment from proceeding with the May 24-25 revocation hearing.[3] (Memo. in Supp. 4.)

Because this Court enjoined the CCC to participate in arbitration and the Ninth Circuit held "[t]he plain language of the CLA makes clear that license revocation proceedings are *not* arbitrable disputes under the agreement" (Appellate Memo. Decision 2 (emphasis added)), the CCC had the

---

[2] IPI also uses various terms such as initiate and grant.
[3] The CCC also argues that it incurred additional monetary damages due to the wrongful enjoinment from proceeding with the May 24-25 revocation hearing. (Memo. in Supp. 4.) These potential damages from having been prevented from proceeding with the revocation hearing have not been proven. Nevertheless, they are separate from those incurred by the CCC when it was wrongfully enjoined into arbitration.

5

right all along not to participate in arbitration. Therefore, the CCC was wrongfully enjoined to arbitrate.

### B. Monetary Damages

The Ninth Circuit has reasoned that "there is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover *provable* damages up to the amount of the bond." *Nintendo of Am., Inc.*, 16 F.3d at 1036 (emphasis added) (citing *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1134 (D.C. Cir. 1992), *cert. denied* 506 U.S. 1049 (1993). "Damages on an injunction bond are limited to those actually and proximately resulting from the effect of the injunction itself . . . ." *Sioni Corp. v. Moorehea*, 299 F. Supp. 2d 1082, 1086 (S.D. Cal. Dec. 3, 2003) (citing *Matek v. Murat*, 862 F.2d 720, 733 (9th Cir. 1988)).

The CCC contends that it incurred costs as a direct result of this Court's order mandating arbitration in the amount of $94,068.15 for administrative fees to the American Arbitration Association, payment to the arbitrator, expert fees, travel expenses, and other associated costs. (Def.'s Memo in Supp. 4.) Out of these expenses, IPI only contests that the CCC should not be awarded $25,000 for its expert fees if this Court determined that the CCC is owed some portion of the security bond. The Court does conclude that the CCC is owed some portion of the security bond as discussed above. Therefore, the only contested issue that remains is whether the CCC is entitled to its $25,000 in expert fees.

The Court holds that the CCC is entitled to the $25,000 expert fees because the expert fees were both an actual and proximate cause of the CCC's wrongful enjoinment. Actual or "'[b]ut for' cause 'exists if the defendant's act helped cause the final result and if that result would not have happened without the defendant's act.'" *Katt v. Riepe*, No. CV-14-0842-PCT-DGC, 2015 WL 3935354, at *11 (D. Ariz. June 26, 2015, *on reconsideration in part*, No. CV-14-08042-PCT-DGC, 2015 WL 4603231 (D. Ariz. July 31, 2015). "[P]roximate cause . . . is that which, in a

natural and continuous sequence, unbroken by an efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Katt*, No. CV-14-0842-PCT-DGC, 2015 WL 3935354, at *11 (citation omitted). "An original actor may be relieved from liability for 'the final result when, *and only when*, an intervening act of another was unforeseeable by a reasonable person in the position of the original actor[.]'" *Id.* (citation omitted) (emphasis added). But for IPI obtaining an order enjoining the CCC from proceeding with the May 24-25 revocation proceeding and an order mandating arbitration, the CCC would not have incurred its expert fees. Additionally, the Court concludes that a party in IPI's position would reasonably foresee that a party mandated to arbitrate would hire an expert for which they rely upon. IPI's other arguments requesting the Court to adopt a standard not supported by any legal authority are unavailing. Therefore, the Court finds the CCC proved, and IPI was unable to overcome the rebuttable presumption, that the CCC is owed $94,068.15 from the security bond.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that the CCC was wrongfully enjoined when the Court issued the TRO and subsequent injunction prohibiting the CCC from proceeding with its May 24-25 revocation proceedings and mandating the CCC to partake in arbitration. The Court therefore GRANTS the CCC's motion and awards it fees and costs proven in the amount of $94,068.15.

The Clerk is directed to immediately release the $94,068.15 from the bond to the Commonwealth Casino Commission.

IT IS SO ORDERED this 6th day of October, 2023.

RAMONA V. MANGLONA
Chief Judge